UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OLDEN MEDLEY,

        Plaintiff,

                                   CASE NO. 2:07-CV-15046
                                   JUDGE MARIANNE O. BATTANI
                                   MAGISTRATE JUDGE PAUL J. KOMIVES

v.

CITY OF DETROIT,
DETROIT POLICE DEPARTMENT, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION REGARDING
## DEFENDANT CITY OF DETROIT'S MOTION TO DISMISS (Doc. Ent. 10)

**Table of Contents**

I.     **RECOMMENDATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **REPORT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    A.     **Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    B.     **The Instant Complaint** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
    C.     **Defendant City of Detroit's Dispositive Motion** . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
    D.     **Fed. R. Civ. P. 12(b)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
    E.     **The Court Should Grant in Part and Deny in Part Defendant's Motion to Dismiss.** . . . . . . . **6**
          1.     **Plaintiff's Complaint is based upon the Fourth and Fourteenth Amendments.** . . . **6**
          2.     **The Detroit Police Department is not a Legal Entity Amenable to Civil Suit.** . . . . . . **7**
          3.     **Plaintiff's claims does not specify an unconstitutional policy or practice of defendant City of Detroit.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
          4.     **Some of plaintiff's claims are barred by *Heck*.** . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
                a.     **The Fourth Amendment claim of false arrest is not barred by *Heck*.** . . . **15**
                b.     **The Fourteenth Amendment claim of violation of due process is barred by *Heck*.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**
                c.     **The Fourth Amendment claim of excessive force is not barred by *Heck*.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**
                 d.     **The Fourth Amendment claim of unlawful incarceration is not barred by *Heck*.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
          5.     **Defendant City of Detroit's request for costs and fees is premature.** . . . . . . . . . . . **24**
    F.     **Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

III.   **NOTICE TO PARTIES REGARDING OBJECTIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

**I.** **RECOMMENDATION:** The Court should grant in part and deny in part defendant City of Detroit's motion to dismiss. The Court should grant the motion to the extent it seeks the termination of the City of Detroit Police Department as a party. Doc. Ent. 10 at 7-8. Also, while the Court should agree that plaintiff's complaint "is silent as to the existence of any constitutionally or statutorily offensive policy or practice, or the manner in which such was implemented to his harm[,]" Doc. Ent. 10 at 8-9, plaintiff should be given an opportunity to amend to cure this defect.

Finally, to the extent defendant City of Detroit's motion asserts that "[p]laintiff's claims mount an impermissible collateral attack on the validity of his conviction[,]" Doc. Ent. 10 at 9-11, the Court should grant the motion to the extent it seeks dismissal of plaintiff's due process claim but should deny the motion to the extent it seeks dismissal of plaintiff's false arrest, excessive force, and unlawful incarceration claims. Doc. Ent. 10 at 9-11.

**II.** **REPORT:**

**A.** **Background**

On Saturday, February 25, 2006, Olden Medley had reached his home between 10:30 p.m. and 11 p.m. when an unidentified figure rushed towards him with a gun and threatened to shoot him. Medley fled from the scene and was stopped two blocks away by Detroit police officers Johnny Bridges and Robert Johnson. According to Medley, the two officers handcuffed Medley, beat him until he was unconscious, and then took him to the Detroit Receiving Hospital. Doc. Ent. 14 at 8. On Sunday, February 26, 2006, Medley was taken into custody by two other officers from the 6th precinct and held without a warrant for 3 days. Doc. Ent. 1 at 4-5. Medley was subsequently convicted of carrying a concealed firearm (Mich. Comp. Laws § 750.227), felon in possession of

a firearm (Mich. Comp. Laws § 750.224f), and possession of a firearm in the commission of a felony (Mich. Comp. Laws § 750.227b). He was sentenced on July 6, 2006. *See* www.michigan.gov/corrections, "Offender Search."

On or about August 1, 2006, Medley appealed his conviction to the Michigan Court of Appeals on the grounds that he was denied effective assistance of counsel; the trial court erred by allowing the opinion testimony of a non-expert witness in his trial; and his conviction for both felony-firearm and felon in possession of a firearm violated the double jeopardy clause. The Court of Appeals affirmed his conviction. *People v. Medley*, No. 272069, 2008 WL 108956 (Mich. App. Jan. 10, 2008). On March 6, 2008, Medley filed an application for leave to appeal to the Michigan Supreme Court. The Michigan Supreme Court denied his application for leave to appeal on May 27, 2008. *People v. Medley*, No. 135957, 481 Mich. 879, 748 N.W.2d 843 (2008).

## B.     The Instant Complaint

On November 27, 2007, while incarcerated at the Mid-Michigan Correctional Facility, Medley, hereinafter plaintiff, filed a complaint against defendants City of Detroit, Detroit Police Department, Bridges and Johnson, in their official and individual capacities pursuant to 42 U.S.C. § 1983. Doc. Ent. 1 at 1, 7.[1] The substance of plaintiff's complaint reads:

> On 2-25-06, I came home from work and was picking up my girlfriend between the hours of 10:30 and 11:00 p.m. As I put my key in the front door of my house, a guy in all black ran from the side of my house with a gun and said, "Don't move or I will blow your [expletive] head off", so I ran. Two blocks away, I was stopped by an unmarked police car occupied by Officers Johnny Bridges Badge No. 395 and Robert Johnson Badge No. 783. I was told by Officer Johnson to put my hands up and get

---

[1]The Eleventh Amendment bars suits against state officials sued in their official capacity. *Will*, 491 U.S. at 71. *See also*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). However, plaintiff may seek injunctive relief from a state official sued in his or her official capacity. *Will*, *supra*, 491 U.S. at 71 n. 10.

on the ground[.]  I complied and as I was trying to tell him that someone was after me, he cuffed me then he started to kick me in the face, ribs, chest, and stomach.  As I was laying on the ground his partner, Johnny Bridges Badge No. 783 came over and beat me some more until the point where I passed out[.]  These officers had to rush me to the Hospital.  The next day I was picked up by two other officers from the 6th Precinct and I was held without a Warrant for 3 days, then I was charged with a gun that I never had in my possession and the gun was in the opposite direction from which I ran from, which will show from the statements of the above named officers.

I have pictures of the injuries caused by the above named officers, I also have the hospital record of the injuries and also there is a Detroit Police Department Dash Camera that was used on the evening in question but was withheld for this reason. The hospital Record is also available at Detroit [Receiving] Hospital in Detroit, Michigan.

Doc. Ent. 1 at 4-5.

In his claim for relief, plaintiff alleges that defendants used police brutality, unlawfully incarcerated him, and violated his due process and civil rights.  In addition to seeking an award for psychological, emotional, nominal and punitive damages, plaintiff would also like Johnson and Bridges to be fired from the Detroit Police Department.  Doc. Ent. 1 at 6.[2]

On January 18, 2008, Judge Battani referred this case to me to conduct all pretrial matters. Doc. Ent. 8.  Plaintiff is currently located at Pine River Correctional Facility.[3]

## C.    Defendant City of Detroit's Dispositive Motion

On February 19, 2008, defendant City of Detroit filed a motion to dismiss in lieu of responsive pleadings, pursuant to Fed. R. Civ. P. 12(b)(6).  Doc. Ent. 10.  The City contends that

---

[2]Plaintiff was granted in forma pauperis status on January 7, 2008.  Doc. Ent. 4.  That same day, the U.S. Marshal received four copies of the complaint for service upon the City of Detroit, the Detroit Police Department, Officer Johnny Bridges and Officer Robert Johnson.  Doc. Ent. 6.  On January 24, 2008, Bridges and Johnson signed waivers of service of summons.  Their answers were due on March 10, 2008.  Doc. Entries 8 and 9.  An appearance has not been filed on behalf of Bridges or Johnson.  Furthermore, neither of these defendants has filed an answer to the complaint.

[3] Plaintiff is reminded that he should file a notice of address change if he transfers facilities again before the conclusion of this matter.

the complaint must be dismissed because (I) the Detroit Police Department is not a legal entity amenable to civil suit; (II) plaintiff does not specify a constitutionally offensive policy or practice of the City of Detroit, which is required to sustain a complaint pursuant to 42 U.S.C. § 1983; and (III) plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), which precludes plaintiff from bringing a civil claim which, if he is victorious, would necessarily invalidate a criminal conviction. Doc. Ent. 10 at 7-11. Defendant City of Detroit seeks dismissal of the case against it with prejudice. Doc. Ent. 10 at 12.

On February 20, 2008, I entered a scheduling order directing that plaintiff file any response to this motion by April 24, 2008. Doc. Ent. 11. On April 25, 2008, plaintiff filed a response, which is signed under penalty of perjury. Doc. Ent. 14 at 16.[4] By his response, plaintiff requests that the Court construe his pleadings liberally, deny defendant City of Detroit's dispositive motion, appoint counsel, and schedule this case for trial. Doc. Ent. 14 at 5, 16.[5]

**D.     Fed. R. Civ. P. 12(b)**

The instant motion to dismiss is based upon Fed. R. Civ. P. 12(b)(6). This rule requires that:

---

[4]Although plaintiff's response was filed with this Court on April 25, 2008 (Doc. Ent. 14), it was signed on April 22, 2008. Doc. Ent. 14 at 16. This report assumes that it was immediately given to the prison authorities for mailing. *Houston v. Lack*, 487 U.S. 266, 276 (1988) ("the notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk.").

[5]Also pending before the court are (1) plaintiff's motion to compel the production of discovery, wherein he requests that the Court "issue an order to compel the Defendants to comply with the rules of discovery (Doc. Ent. 13 at 1-5); (2) plaintiff's motion for the appointment of counsel (Doc. Ent. 13 at 6-10), and (3) plaintiff's motion to amend request for production of discovery materials, wherein he requests that the Court "issue an order directing the Defendants to preserve the video footage of the City of Detroit's police vehicles' dash camera to be utilized as critical evidence in this case[,]" Doc. Ent. 15 at 4.

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]

Fed. R. Civ. P. 12(b)(6).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1965 (May 21, 2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true[.]" *Bell Atlantic Corp.*, 127 S. Ct. at 1965 (citations and quotations omitted). It is not enough that "the pleadings [leave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id*. at 1968. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1970. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974. Claims should be "nudged . . . across the line from conceivable to plausible" to avoid dismissal. *Id.*

**E.      The Court Should Grant in Part and Deny in Part Defendant's Motion to Dismiss.**

**1.      Plaintiff's Complaint is based upon the Fourth and Fourteenth Amendments.**

Plaintiff's complaint can be construed to plead four counts: (I) a Fourth Amendment claim of unreasonable seizure based on excessive force used by the officers in his arrest; (II) a Fourth Amendment claim of unreasonable seizure based on a false arrest; (III) a Fourteenth Amendment due process claim presumably based on his conviction for possession of guns which he claims were

not in his possession; and (IV) a Fourth Amendment claim of unlawful incarceration based on being held for three days without a warrant and without a judicial determination of probable cause. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) ("the allegations of the pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers[.]").

This interpretation of plaintiff's complaint is buttressed by the allegations which appear in his response to the instant motion. For example, plaintiff mentions the Fourth Amendment right against unreasonable seizure in conjunction with excessive force, probable cause and false arrest. Doc. Ent. 14 at 3 ¶¶ 4-6. Also, plaintiff characterizes his complaint as "alleging injury inflicted from a warrantless seizure, [the] use of excessive force, brutality suffered after being subdued, [a] failure to intercede to prevent excessive force and brutality and false arrest by officers (Johnny Bridges and Robert Johnson), employed by the City of Detroit and assigned to the Detroit Police Department, [who] intentionally engaged in this malfeasance while acting in their personal capacity under the color of state law and conspiring to violate these rights." Doc. Ent. 14 at 7.[6]

## 2.    The Detroit Police Department is not a Legal Entity Amenable to Civil Suit.

Plaintiff contends that the Detroit Police Department is an entity amenable to suit. Doc. Ent. 14 at 11. However, defendant is correct in its argument that the Detroit Police Department is not

---

[6]Plaintiff cites *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) ("A civil conspiracy is 'an agreement between two or more persons to injure another by unlawful action.'") (citing *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir.2000)). Doc. Ent. 14 at 14. Plaintiff also claims there is an issue of material fact as to "whether there existed a conspiracy to violate [his] rights and then attempt to evade detection or liability associated with these attacks." Doc. Ent. 14 at 15.

However, this report does not construe plaintiff's complaint as alleging a conspiracy claim. First, "conclusory allegations are not sufficient to state a claim under 42 U.S.C. §§ 1985(3)[.]" *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1971). Second, to the extent, if at all, plaintiff intended to bring his claim pursuant to 28 U.S.C. § 1985(3), "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

amenable to a civil suit. "[T]he police department is not a legal entity against whom a suit can be directed." *Haverstick Enterprises, Inc. v. Financial Fed. Credit, Inc.*, 803 F. Supp. 1251, 1256 (E.D. Mich. 1992) (citing *Moomey v. City of Holland*, 490 F.Supp. 188 (W.D. Mich. 1980)). The Detroit Police Department has specifically been found to be "merely a creature of the City of Detroit," which is the proper defendant. *Pierzynowski v. Police Dep't City of Detroit*, 941 F. Supp. 633, 637 n. 4 (E.D. Mich. 1996). Therefore, defendant City of Detroit's motion to dismiss the complaint against the Detroit Police Department should be granted to the extent it seeks termination of the Detroit Police Department as a defendant.

### 3. Plaintiff's claims does not specify an unconstitutional policy or practice of defendant City of Detroit.

**a.** Defendant City of Detroit also argues that plaintiff's complaint against it must be dismissed, because the complaint does not allege an unconstitutional policy or practice of the city. Doc. Ent. 10 at 8-9. Specifically, defendant City of Detroit contends that "Plaintiff's complaint is silent as to the existence of any constitutionally or statutorily offensive policy or practice, or the manner in which such was implemented to his harm." Doc. Ent. 10 at 9.

Defendant City of Detroit cites a number of Third Circuit cases holding that plaintiffs must identify the particular conduct of the defendants which have caused harm to the plaintiff, while noting that the Sixth Circuit has no heightened pleading standard for civil rights cases. Doc. Ent. 10 at 8-9; *Fluellen*, 816 F.Supp. at 1215 ("The court could find no indication that the Sixth Circuit requires a heightened pleading to avoid a motion to dismiss under Rule 12(b)(6)."). Defendant City of Detroit relies upon *Fluellen*, 816 F.Supp. at 1215 (construing the city defendants' motion for summary judgment as a Rule 12(b)(6) motion, "[a] complete failure to plead a policy or custom would result in dismissal.") (referencing *Foster v. Walsh*, 864 F.2d 416, 419 (6th Cir.1988)) and

*Laise v. City of Utica*, 970 F.Supp. 605, 608 (E.D. Mich. 1997) ("plaintiffs have not pled the existence of an unconstitutional practice, custom or policy by the City of Utica as it relates to the facts of this case. In fact, the only mention tha[t] plaintiffs make of any policy is in their reply brief[.]"). Doc. Ent. 10 at 9.

**b.**      In response to the dispositive motion, plaintiff notes that "the city's failure to investigate and discipline the alleged misconduct of police officers supports the inference that the city approves of or tolerates the misconduct alleged[.]" Doc. Ent. 14 at 4 ¶ 7. Plaintiff also notes that "a municipality such as a city may only be liable under §1983 by showing, i.e., that a policy or custom, a failure to train (after an adequate opportunity for discovery), or deliberate indifference, contributed to" the alleged constitutional deprivation. Doc. Ent. 14 at 4 ¶ 8. Furthermore, plaintiff suggests that his claim against defendant City of Detroit is based upon a failure to train its police offices. Doc. Ent. 14 at 4 ¶ 9.

Within his response brief, plaintiff claims that following his discharge from Detroit Receiving Hospital he was detained for several days in a Detroit jail, where his complaint of the aforementioned actions was ignored. Doc. Ent. 14 at 8, 15. Plaintiff contends that he "has not had an adequate opportunity to demand or acquire discovery in this case; there are photographs of the injuries inflicted, hospital records, including video footage from the police vehicles' dash camera of the incident and will be demanded in a separate request for discovery relevant to this action." Doc. Ent. 14 at 9, 10-11.

In addition to mentioning custom and policy, he makes use of phrases such as "systemic failure to adequately train", "deliberate indifference", "failure to investigate and discipline the misconduct", "use of brutality". Doc. Ent. 14 at 9-10. Plaintiff contends that "[a]lthough discovery

has not . . . commenced, a genuine issue of material fact[] exist[s] as to whether the officers were trained in procedures other than first aid, whether they were trained to diagnose medical conditions relating to an unconscious individual, whether they were adequately trained in the proper procedures regarding an unconscious individual, or whether those procedures required an ambulance be summoned to evaluate the unconscious individual's condition, or whether transporting an unconscious individual is part of the training protocol received from the city or department when a person in custody is unconscious or unres[p]onsive, and whether the city or department investigated these officers conduct or were aware of other misconduct or had engag[ed] in similar conduct or whether the city or department's deliberate indifference was a direct result of [their] tolerating these officers misconduct."   It is plaintiff's position that "once discovery has been accomplished the actions of the officers can clearly be establish[ed] that the injury was caused by the city . . . and was directly related to a policy or custom of a failure to train, legitimately related to the attacks of a subdued citizen, the officers medical diagnosis of an unconscious individual and transportation of an unconscious individual to a hospital; these actions were the result of a deliberate indifference for refusing to conduct an investigation and tolerating these officers misconduct which contributed to the civil rights being violated as to preclude dismissal of this case."  Doc. Ent. 14 at 11-12.  Plaintiff also contends that "[a] jury could infer from a single use of excessive force that it was attributable to inadequate training or supervision that amounted to deliberate indifference or gross negligence on part of city officials in charge."  Doc. Ent. 14 at 12.

Plaintiff also contends that, following discovery, "the actions can be established by reviewing the photographs, hospital records, including video footage from the police vehicles' video camera, Brady material, policy department training requirements, internal affairs division

investigative reports, municipality investigations of these officers, psychological records, etc., will demonstrate that the seizure was unreasonable, the use of excessive force used upon a subdued citizen was unjustified, these officers had a realistic opportunity to intercede, the cumulative effect upon these actions and the failure to train, combined with the officers conspiring to violate the rights of a free citizen is sufficient to enjoin the city, department and officers for liability associated with these actions." Doc. Ent. 14 at 15-16. He mentions "the cumulative effect of . . . violations due to a custom or polic[y] relevant to a failure to train and deliberate indifference for tolerating this misconduct which directly contributed to these constitutional violations as to preclude dismissal of this case." Doc. Ent. 14 at 16.

**c.** A municipal defendant can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue through an unconstitutional policy or practice. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). The same case held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. A city may not be sued under a *respondeat superior* theory based solely on the actions of its employees. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978).

Although plaintiff's *pro se* complaint is held to a less stringent standard than complaints drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the complaint here does not allege a specific unconstitutional practice or policy of the City of Detroit. Doc. Ent. 1 at 4-5. Nonetheless, the Court should permit plaintiff an opportunity to amend his complaint to confirm that his claim of municipal liability against defendant City of Detroit is based upon an allegation of an unconstitutional policy or custom. In *Leatherman v. Tarrant County Narcotics Intelligence and*

*Coordination Unit*, 507 U.S. 163 (1993), the Supreme Court held that "a federal court may [not] apply a 'heightened pleading standard'–more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure–in civil rights cases alleging municipal liability under Rev.Stat. § 1979, 42 U.S.C. § 1983." *Leatherman*, 507 U.S. at 164. Furthermore, dismissals of claims brought under the civil rights statutes, such as the instant claim brought under 42 U.S.C. § 1983, "are scrutinized with special care." *Fluellen v. United States Dep't of Justice Drug Enforcement Administration*, 816 F.Supp. 1206, 1209 (E.D. Mich. 1993) (citing *Mercado v. Kingsley Area Schools/Traverse City Public Schools Adult Educ. Consortium*, 727 F.Supp. 335, 338 (W.D. Mich. 1989)).

Although plaintiff's complaint does not provide enough information to show that the elements of a claim exist or to allow an inference that the elements exist, *Mercado*, 727 F. Supp. at 338 (citing cases), plaintiff's response to the instant motion makes clear that his claim(s) against defendant City of Detroit are based upon municipal liability. Doc. Ent. 14. Furthermore, the Sixth Circuit's decision in *Petty v. County of Franklin, Ohio*, 478 F.3d 341 (6th Cir. 2007), acknowledged the difficulty of knowing whether a policy or custom exists at the time a complaint is filed and before discovery has taken place. In *Petty*, the Court considered "whether or not Petty's complaint properly states a claim for municipal liability under *Monell* and *Tuttle*." *Petty*, 478 F.3d at 347. Petty's claim of "Municipal Liability" contained the following paragraph:

> Said acts by the individual Defendants County, Franklin County Sheriff's Department, Jim Karnes, John Doe # 1 and John Doe # 2, were proximately caused by certain customs and policies of Defendants County, Franklin County Sheriff's Department and Karnes, including but not limited to, a failure to adequately and reasonably train, supervise and discipline officers in such a way to properly protect the constitutional rights of citizens; and a specific set of policies established during the days of the incidents described above, which had the effect of permitting,

encouraging, approving and ratifying violations of the constitutional rights of citizens, including Plaintif[f], as described above.

*Petty*, 478 F.3d at 347-348. Although the Court ultimately found that "Petty [was] unable to survive summary judgment with respect to his claims against the County[,]" the Court was "not convinced that the district court was correct in dismissing Petty's municipal-liability claim at the 12(b)(6) stage." *Id*. at 348. As the Court observed, "[w]e wonder how Petty would necessarily know, at the point of his *complaint*, and without the benefit of discovery, whether such a custom or policy might exist, and if it does exist, what its contours might be or how exactly it effected a violation of his constitutional rights." *Id*.

It follows that plaintiff here cannot be expected to show significant knowledge of the training or practices of the police department, or defendant City of Detroit's customs or policies to allege a specific unconstitutional policy or practice of the City of Detroit which led to his alleged constitutional injuries. As delineated above, plaintiff has arguably set forth claims under the Fourth and Fourteenth Amendments. Plaintiff should be given an opportunity to amend his complaint to confirm whether or not his claim against defendant City of Detroit is consistent with the representations made in his response to the instant motion. Any suspicion about the type of policy or custom, if any, which resulted in the actions at issue here may be examined during discovery. Its existence may be challenged during summary judgment. *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 509 (6th Cir. 1996) ("the finding of a custom or policy is the initial determination to be made in any municipal liability claim. If a plaintiff advances sufficient evidence to create a genuine issue of material fact as to the existence of such custom or policy, then the question of 'deliberate indifference' is one for the jury to decide and not for the court at the summary judgment stage.").

**4.      Some of plaintiff's claims are barred by *Heck*.**

Defendant argues that plaintiff's claims are barred by the requirements of *Heck*. Defendant City of Detroit represents that "[p]laintiff's conviction has not been reversed, set aside or expunged, and Plaintiff does not demonstrate, intimate, or hint that he has successfully challenged his conviction[.]" Defendant also contends that plaintiff is employing this lawsuit "as a vehicle to challenge the validity of [his] conviction[.]" Doc. Ent. 10 at 11.

Under *Heck*, a plaintiff in a civil rights case arising from an allegedly unconstitutional conviction, arrest, or imprisonment must show that:

> the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, *28 U.S.C. § 2254*. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under *§ 1983*. Thus, when a state prisoner seeks damages in a *§ 1983* suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed[.]

*Heck*, 512 U.S. at 486-487. The logical reason for this rule is that prisoners could use a civil suit to collaterally attack their convictions. In this case, plaintiff is seeking damages based on the actions of police officers during his arrest; he is seeking relief against the city, the department and the two officers for "police brutality, unlawful incarceration, and violating my due process and civil rights." Doc. Ent. 1 at 6. Plaintiff's convictions have not been overturned on appeal, and he has not included the constitutional violations alleged in this complaint as grounds for his appeals.

The Michigan Court of Appeals opinion states that "[b]efore Officer Johnson apprehended defendant, defendant pulled a nickel-plated handgun from the inside pocket of his jacket, and he threw it to the ground in a field behind a house. Officer Johnson returned to the field and recovered

the handgun." *People v. Medley*, 2008 WL 108956, *1. Plaintiff was convicted of carrying a concealed firearm, firearms possession by a felon, and possession of a firearm in the commission of a felony, for carrying a handgun and throwing it as he ran from police. *People v. Medley*, No. 272069 2008 WL 108956 (Mich. App. Jan. 10, 2008). The statute regarding carrying a concealed weapon prohibits carrying "a pistol concealed on or about" a person without a license except on one's property. Mich. Comp. Laws § 750.227.[7] The statute regarding firearms possession by a felon prohibits a person convicted of a felony from possessing a firearm until he has completed certain conditions of his sentence, probation or parole. Mich. Comp. Laws § 750.224f.[8] The statute regarding possession of a firearm in the commission of a felony prohibits a person from possessing a firearm during the commission of a felony. Mich. Comp. Laws § 750.227b.[9]

**a.     The Fourth Amendment claim of false arrest is not barred by *Heck*.**

---

[7]"A person shall not carry a pistol concealed on or about his or her person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person, except in his or her dwelling house, place of business, or on other land possessed by the person, without a license to carry the pistol as provided by law and if licensed, shall not carry the pistol in a place or manner inconsistent with any restrictions upon such license." Mich. Comp. Laws § 750.227(2).

[8]"Except as provided in subsection (2), a person convicted of a felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state until the expiration of 3 years after [certain] circumstances exist[.]" Mich. Comp. Laws § 750.224f(1). "A person convicted of a specified felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state until [certain] circumstances exist[.]" Mich. Comp. Laws § 750.224f(2).

[9]"A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223, section 227, 227a or 230, is guilty of a felony, and shall be imprisoned for 2 years. Upon a second conviction under this section, the person shall be imprisoned for 5 years. Upon a third or subsequent conviction under this subsection, the person shall be imprisoned for 10 years." Mich. Comp. Laws § 750.227b(1) (internal footnotes omitted).

Plaintiff's response contends "there are numerous issues of material fact as to whether the officers had probable cause[.]" Doc. Ent. 14 at 15. To the extent plaintiff is alleging a claim of false arrest on the basis that his warrantless arrest was conducted without probable cause, the Supreme Court has stated, "[w]hether [a warrantless] arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citing cases).

The Supreme Court has also stated that "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474 (1980) (citing cases). "The exclusionary principle of *Wong Sun [v. United States*, 371 U.S. 471 (1963)] and *Silverthorne Lumber Co. [v. United States*, 251 U.S. 385 (1920)] delimits what proof the Government may offer against the accused at trial, closing the courtroom door to evidence secured by official lawlessness. Respondent is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilty through the introduction of evidence wholly untainted by the police misconduct." *Crews*, 445 U.S. at 474.

This Court should conclude that any claim by plaintiff for false arrest on the basis that his warrantless arrest was conducted without probable cause would not be barred by *Heck*. Because "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of

some other bar to the suit." *Heck*, 512 U.S. at 487 (internal footnote omitted). As the Supreme

Court footnoted:

> [A] suit for damages attributable to an allegedly unreasonable search may lie even
> if the challenged search produced evidence that was introduced in a state criminal
> trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of
> doctrines like independent source and inevitable discovery, see *Murray v. United
> States*, 487 U.S. 533, 539 (1988), and especially harmless error, see *Arizona v.
> Fulminante*, 499 U.S. 279, 307-308 (1991), such a § 1983 action, even if successful,
> would not *necessarily* imply that the plaintiff's conviction was unlawful. In order
> to recover compensatory damages, however, the § 1983 plaintiff must prove not only
> that the search was unlawful, but that it caused him actual, compensable injury, see
> *Memphis Community School. Dist. v. Stachura*, 477 U.S. 299, 308 (1986), which, we
> hold today, does *not* encompass the "injury" of being convicted and imprisoned
> (until his conviction has been overturned).

*Heck*, 512 U.S. at 487 n.7. Here, plaintiff's Fourth Amendment claim challenging the existence of

probable cause for his arrest may survive defendant's *Heck* challenge; however, in the absence of

some other bar to this claim, plaintiff will have to prove that the arrest was unlawful and that "it

caused him actual, compensable injury," for an award of compensatory damages. *Id.*

This conclusion is supported by the Sixth Circuit's decision in *Fox v. Desoto*, 489 F.3d 227

(6ᵗʰ Cir. 2007). Therein, the Sixth Circuit noted that "[t]he statute of limitations for a claim for false

arrest, however, 'where the arrest is followed by criminal proceedings, begins to run at the time the

claimant becomes detained pursuant to legal process.'" *Fox*, 489 F.3d at 235 (quoting *Wallace v.

Kato*, 127 S.Ct. 1091, 1100 (2007)). "The *Wallace* Court rejected both the argument that the statute

of limitations on a false arrest claim should begin only after "an anticipated future conviction ...

occurs and is set aside," *id*. at 1098, and that the statute of limitations on such a claim should be

tolled until an anticipated future conviction is set aside, *id*. at 1099. Accordingly, the possibility that

the plaintiff's already-accrued § 1983 claims might impugn an anticipated future conviction did not

trigger the *Heck* rule for deferred accrual." *Fox*, 489 F.3d at 235.

17

Further support for the conclusion that plaintiff's false arrest/probable cause claim is not barred by *Heck* is found in *Montgomery v. De Simone*, 159 F.3d 120 (3d Cir. 1998). In *Montgomery*, plaintiff's convictions for speeding, drunk driving, and refusing to take a breathalyzer test were reversed. *Montgomery*, 159 F.3d at 123. Among the claims in her § 1983 suit were malicious prosecution, false arrest and false imprisonment. *Id.* The Court considered "when the two-year limitations period began to run on Montgomery's section 1983 false arrest and false imprisonment claims." *Id.* at 126. Citing *Heck*, 512 U.S. at 484, the Third Circuit stated that "[a] claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more." *Montgomery*, 159 F.3d at 126. The Court also noted that Montgomery's "section 1983 false imprisonment claim relate[d] only to her arrest and the few hours she was detained immediately following her arrest." *Id.* After arriving at the conclusion that plaintiff's false arrest and false imprisonment claims were time-barred, the Court noted: "Because a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest, we find that Montgomery's claims for false arrest and false imprisonment are not the type of claims contemplated by the Court in *Heck* which necessarily implicate the validity of a conviction or sentence." *Id.* at 126 n.5. *See also Wallace v. Kato*, 127 S.Ct. 1091, 1100 (2007) ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process.").

**b.      The Fourteenth Amendment claim of violation of due process is barred by *Heck*.**

Plaintiff claims he was "charged with a gun that [he] never had in [his] possession[.]" Doc. Ent. 1 at 4-5. Plaintiff's complaint asserts that the "Detroit Police Department Dash Camera that was used on the evening in question . . . was withheld[.]" Doc. Ent. 1 at 5.

In response to defendant's motion, plaintiff states that "the arresting officers subjective reason for making the arrest need not be the criminal conviction as to which the facts provide probable cause[.]" Doc. Ent. 14 at 3 ¶ 5. Plaintiff also states that the officers intentionally ignored his explanation that "someone was in pursuit of [him] that had previously threatened to shoot him with a gun[.]" Apparently plaintiff offered this explanation after he was placed in handcuffs. Doc. Ent. 14 at 8, 13, 14. Plaintiff claims that officers provided fabricated information to the prosecutor which resulted in his further detention and eventual prosecution. Plaintiff claims this was done to "evade liability associated with these attacks." Doc. Ent. 14 at 8. Plaintiff questions "whether there existed a conspiracy to violate [his] rights and then attempt to evade detection or liability associated with these attacks." Doc. Ent. 14 at 15.

Perhaps plaintiff is claiming that defendant City of Detroit, defendant Bridges and/or defendant Johnson "initiated and pursued prosecution without probable cause." *Campbell v. Erie Tp.*, 133 F.Supp.2d 953, 957 (E.D. Mich. 2001). Perhaps he is claiming that his due process rights were violated when he was convicted for possession of weapons which were not in his possession.

In either event, his Fourteenth Amendment due process claim would imply the invalidity of his conviction. "*Heck* held that a claim of malicious prosecution does not accrue until the underlying conviction is invalidated, 512 U.S. at 489-90[], and this holding was reaffirmed in *Wallace[v. Kato*, 127 S.Ct. 1091, 1098 (2007)]." *Fox*, 489 F.3d at 235. Furthermore, a claim that plaintiff was convicted of being a felon in possession of a firearm, carrying a concealed weapon and

possession of a firearm in the commission of a felony *when he did not possess the gun* clearly challenges the validity of his conviction(s).

Plaintiff's convictions have not been overturned. Finding a violation of his civil rights based on this claim would imply that his conviction was invalid; therefore, the count of plaintiff's complaint based on a violation of his Fourteenth Amendment right of due process is also barred by *Heck*.

**c.** **The Fourth Amendment claim of excessive force is not barred by *Heck*.**

In response to the instant motion, plaintiff claims that "[a]fter being restrained, the Plaintiff was kicked in the face which knocked him to the ground[.] [W]hile lying on the ground he was kicked in the ribs, chest, and stomach by Officer Johnson and squirming to avoid blows from this attack. Immediately following this attack, the Plaintiff was continued to be beaten by Officer Bridges until eventually losing consciousness." Doc. Ent. 14 at 13, 14. Perhaps commenting on the severity of his injuries, plaintiff states that the defendant officers "had to rush the Plaintiff to the Detroit Receiving Hospital located in Detroit, Michigan (rather than summoning an ambulance), to be administered emergency medical treatment by the hospital's trauma personnel and admitted for injuries sustained during these attacks." Doc. Ent. 14 at 8, 14-15. Plaintiff appears to claim that there are "issues of material fact as to whether officers used excessive force in effectuating an arrest." Doc. Ent. 14 at 14. He also questions whether the seizure was reasonable, whether the officers struck a subdued individual, whether the officer had a realistic opportunity to intercede and whether the officers' use of force was justified. Doc. Ent. 14 at 15.

Such a claim is properly analyzed under the Fourth Amendment on the basis that the defendant officer's actions were unreasonable. *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("*all*

claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."); *Floyd v. City of Detroit*, 518 F.3d 398, 405 (6th Cir. 2008) (quoting *Graham*, 490 U.S. at 395). Also, "a policeman has a duty to intercede on behalf of a person whose constitutional rights are being violated by another officer. An officer who fails to do so may be liable for nonfeasance. Before such liability may attach, however, the officer must have a 'realistic opportunity' to prevent the unconstitutional use of force." *Campbell v. Erie Tp.*, 133 F.Supp.2d 953, 956 (E.D. Mich. 2001) (internal and external citations omitted).

Plaintiff's claim of unreasonable seizure based on excessive force or his claim that the other defendant officer should have intervened would not necessarily imply that his conviction was invalid. This Court has noted that "courts have consistently allowed § 1983 claims arising out of allegations that the excessive force occurred *after* the arrest." *Houston*, 2007 WL 1005715 at *9 (referencing *Schreiber v. Moe*, 445 F.Supp.2d 799 (W.D. Mich. 2006)) and *Potvin v. City of Westland Police Dept.*, No. 05-70291, 2006 WL 3247116 (E.D. Mich. Nov. 7, 2006)). This Court has also noted that "[c]ourts also allow excessive force claims for events *occurring in effectuating the arrest* where the lawfulness of the arrest was not an element to the underlying criminal conviction." *Houston*, 2007 WL 1005715 at *9 (emphasis added) (referencing *Donovan v. Thames*, 105 F.3d 291 (6th Cir. 1997) (Ky.)[10]). In another Sixth Circuit case discussing the application of *Heck* to a resisting arrest conviction, Judge Sutton filed a concurring opinion arguing that "As a

_____

[10]"Donovan was tried by the Kenton County District Court and convicted of resisting arrest and the drug-related charges. However, Donovan was acquitted of the charge of domestic violence." *Donovan*, 105 F.3d at 293.

matter of sheer logic, one may bring a successful excessive-force claim without having to establish that the resisting-arrest charge was unlawful: An officer could legitimately arrest a suspect but use excessive force in bringing the suspect to the station. And as a matter of state-court precedent, Ohio law permits exactly that type of excessive-force claim, namely one that follows a lawful arrest." *Swiecicki v. Delgado*, 463 F.3d 489, 504 (6th Cir. 2006) (Sutton, J. concurring in part and dissenting in part).

Finding that an arrest constituted an unreasonable seizure because excessive force was used does not necessarily imply the invalidity of plaintiff's convictions for being a felon in possession of a firearm, carrying a concealed weapon and possession of a firearm in the commission of a felony.[11]  An arrest could be performed after finding sufficient probable cause, but the arrest could constitute an unreasonable seizure for some reason that would not preclude prosecution of a case or prevent the use of certain evidence in a trial.  In this case, plaintiff contends that the defendant police officers used excessive force during the arrest.  The arrest itself may have been lawful, as could be the finding of weapons in plaintiff's possession, while the force used may have been excessive to the point that it constitutes an unreasonable seizure under the Fourth Amendment.  The claim of excessive force would be independent from a claim of unlawful arrest which might challenge plaintiff's conviction.  The statutes governing the crimes for which plaintiff was convicted, unlike, for example, the statute for failure to obey (Mich. Comp. Laws § 750.479a),[12] do

---

[11]"[T]he predicate felony for felony-firearm was felon in possession and not CCW."  *People v. Medley*, 2008 WL 108956 at *2.

[12]Mich. Comp. Laws § 750.479a, which concerns the failure to obey a police or conservation officer's directions, provides in part that "[a] driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the vehicle, extinguishing

not require that the officer be acting in the lawful performance of his duties. Finding that excessive force was used during this arrest would not impact the jury's determination of defendant's guilt on the charges of felon in possession of a firearm, carrying a concealed weapon and possession of a firearm in the commission of a felony. Therefore, plaintiff's excessive force claim is not barred by *Heck*.

The holding of *Heck* ruled that "the district court must consider whether a judgment in favor of the plaintiff would *necessarily* imply the invalidity of his conviction or sentence." 512 US 477, 486-487 (emphasis added). However, the claim of excessive force in this case does not necessarily imply that plaintiff's convictions were invalid; the excessive force may have occurred incident to a lawful arrest, and the conviction may have been based on evidence that was properly found consistent with plaintiff's constitutional rights.

**d.      The Fourth Amendment claim of unlawful incarceration is not barred by *Heck*.**

Plaintiff also alleges that he was unlawfully incarcerated by being held without a warrant for three days following his arrest. Doc. Ent. 1 at 4. To reiterate, plaintiff claims that officers provided fabricated information to the prosecutor which resulted in his further detention and eventual prosecution. Plaintiff claims this was done to "evade liability associated with these attacks." Doc. Ent. 14 at 8.

A state is obligated to "provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a

---

the lights of the vehicle, or otherwise attempting to flee or elude the police or conservation officer. This subsection does not apply unless the police or conservation officer giving the signal is in uniform and the officer's vehicle is identified as an official police or department of natural resources vehicle." Mich. Comp. Laws § 750.479a(1).

judicial officer either before or promptly after arrest." *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975). "[T]he Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention[.]" *Gerstein v. Pugh*, 420 U.S. 103, 126 (1975). Failure to provide such a determination is a violation of a person's constitutional right. However, there is an "established rule that illegal arrest or detention does not void a subsequent conviction." *Id.* at 119.

Plaintiff's arrest occurred late on the night of Saturday, February 25, 2006, or early on the following morning. Doc. Ent. 1 at 4. The complaint alleges that he was held for three days without a warrant. Thus, plaintiff appears to allege that his arraignment for this event occurred on Tuesday, February 28, 2006. While it is unclear whether this delay is significant enough to be considered a violation of plaintiff's constitutional rights to have the determination of probable cause "made by a judicial officer...promptly after arrest," it is clear that plaintiff's claim of this constitutional harm is not barred by *Heck*.

**5.     Defendant City of Detroit's request for costs and fees is premature.**

Defendant City of Detroit's request for costs and reasonable attorney fees "as occasioned by the need to appear, draft, and argue this matter[,]" Doc. Ent. 10 at 12, is premature. Should the Court enter judgment in favor of defendants, defendant City of Detroit may present a bill of costs to the clerk of this Court pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1). If defendant seeks attorney fees pursuant to 42 U.S.C. § 1988, it should follow the procedure set forth in Fed. R. Civ. P. 54(d)(2).

**F.     Conclusion**

For the foregoing reasons, the Court should grant defendant City of Detroit's motion to dismiss to the extent it seeks termination of the City of Detroit Police Department as a party. The

Court should also permit plaintiff an opportunity to amend his complaint as it relates to defendant City of Detroit.  Finally, the Court should grant the motion to the extent it seeks dismissal of plaintiff's due process claim but should deny the motion to the extent it seeks dismissal of plaintiff's false arrest, excessive force, and unlawful incarceration claims.

## III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231, American Federation of Teachers, ALF-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives                  <br>
PAUL J. KOMIVES

UNITED STATES MAGISTRATE JUDGE

Dated 8/14/08

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record by electronic
means or U.S. Mail on August 14, 2008.

s/Eddrey Butts
Case Manager